DOE - final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-056-CV





JANE DOE,



 APPELLANT


vs.





SMITHKLINE BEECHAM CORPORATION, SMITHKLINE BEECHAM


CLINICAL LABORATORIES, INC., AND THE QUAKER OATS COMPANY,




 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 490,554, HONORABLE PETE LOWRY, JUDGE PRESIDING



 




 This case involves liability of an employer and a testing lab in connection with a
pre-employment drug-screening test. Appellant, Jane Doe, the prospective employee, appeals
from an adverse summary judgment. We will affirm the summary judgment in part and reverse
and remand in part.



BACKGROUND


 The Quaker Oats Company ("Quaker") offered Doe, a Master of Business
Administration student, a job as a marketing assistant in its Chicago office at a starting salary of
$49,000 plus a bonus of $4,000. The offer did not state a definite term of employment. Quaker's
employment offer was conditioned on Doe (1) satisfactorily completing a drug-screening
examination as required by Quaker policy and (2) providing documentation meeting the
requirements of the Immigration Reform & Control Act of 1986. (1) Doe had previously signed a
"Pre-Employment Consent to Drug Screening" form required by Quaker. Quaker furnished Doe
with a drug "testing package" that directed her to the Austin Occupational Health Center
("AOHC") (2) where she completed the enclosed forms, including a questionnaire on recent
medication use, and provided a urine sample. The only medication Doe listed on the pretesting
questionnaire was her prescribed birth-control pills. (3) AOHC forwarded Doe's sample to
SmithKline Beecham Clinical Laboratories, Inc. ("SmithKline") (4), the drug testing laboratory with
which Quaker had contracted for its pre-employment screening.

 Doe's sample tested positive for the presence of opiates. (5) SmithKline so informed
Quaker, which, through its representatives, notified Doe by telephone that her employment offer
had been rescinded because "she had tested positive for narcotics." Doe denied any illegal drug
use and requested an opportunity to submit a second test sample. She was informed that,
according to Quaker policy, the offer had been automatically rescinded and that her only recourse
was to reapply for the position in six months.

 During one of several telephone conversations between Doe and Quaker
representatives, as a possible explanation for the positive test result, Doe stated that she had taken
one of her roommate's prescription painkillers. She later retracted this statement and accounted
for the fabrication regarding the painkillers as made "under extreme duress" and when she was
"completely, essentially out of [her] mind." When Doe reapplied with Quaker, she was not hired
for the stated reason of her misrepresentation of taking someone else's prescription medication.

 Doe asserts that her positive test for opiates was the result of her consumption of
several poppy seed muffins in the days before she provided her urine sample. It is undisputed that
for several years before Doe's test, scientific literature on drug testing reported that ordinary
poppy seed consumption could produce positive test results for opiates. Neither the pretesting
forms nor any representative of Quaker, AOHC, or SmithKline inquired about Doe's consumption
of poppy seed products or warned her to abstain from them before the test.

 Doe initially brought suit against SmithKline and AOHC for negligence in the
manner in which the drug test was conducted. After Quaker declined her reapplication, Doe
added Quaker as a defendant. Doe alleged negligence on the part of SmithKline and Quaker in
their: (1) failure to warn of the poppy seed danger, to inform her to refrain from poppy seed
consumption before the test, or to inquire about consumption of poppy seeds on the pretesting
questionnaire; (2) failure to review properly her test results or conduct additional tests to
determine whether they indicated poppy seed consumption rather than illegal drug use; and (3)
failure to retain and return her urine sample properly. Doe also urged that Quaker breached the
employment contract by failing to provide her a reasonable opportunity to pass the drug test and
that SmithKline tortiously interfered with that contract. Finally, Doe alleged slander and libel,
claiming SmithKline and Quaker had compelled her to disclose her failure of the drug test to other
prospective employers.

 Quaker brought a counterclaim seeking attorney's fees for Doe's alleged breach of
the waiver and release provisions of the "Pre-Employment Consent to Drug Screening." Each
defendant moved for summary judgment. The trial court granted summary judgment and ordered
that Doe take nothing by her claims against Quaker and SmithKline. The trial court also granted
summary judgment for Doe on Quaker's counterclaim. Doe appeals by seven points of error from
the take-nothing judgment. Quaker does not appeal the summary judgment on its counterclaim.




DISCUSSION AND HOLDING


 The standards for reviewing a summary judgment are well established:



(1) The movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a
matter of law.


(2) In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as
true.


(3) Every reasonable inference must be indulged in favor of the nonmovant and
any doubts resolved in its favor.



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 We will construe all summary-judgment evidence and inferences as favorable to
Doe. Doe did not use any illegal drugs; the only possible explanation for her positive test is her
consumption of poppy seed bakery goods. Had Doe known about the danger of poppy seeds
causing a positive test, she would have avoided them or noted her consumption on the pretesting
questionnaire, thereby passing the test, and becoming a Quaker employee. Quaker and
SmithKline knew or had reason to know of the dangers of poppy seed consumption relative to
drug testing. Neither Quaker nor SmithKline warned Doe of the danger or took any precautions
to prevent a poppy seed mistake. Quaker's decision not to hire her on reapplication was based
in part on her prior positive drug test. Doe did not take any of her roommate's prescription
drugs, and made the misrepresentation about taking her roommate's painkillers in a moment of
duress and emotional turmoil.

 The question on appeal is not whether the summary-judgment proof raises a fact
issue, but whether the summary-judgment proof establishes as a matter of law that no genuine
issues of material fact exist as to one or more of the essential elements of the plaintiff's cause of
action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). When the order does
not give a specific reason for granting the judgment, the nonmovant, on appeal, must show why
each ground asserted in the motion is insufficient to support the order. Rogers v. Ricane Enters.,
Inc., 772 S.W.2d 76, 79 (Tex. 1989); McCrea v. Cubilla Condominium Corp., 685 S.W.2d 755,
757 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

 Doe brought several claims under different legal theories against each defendant. 
Doe urged four causes of action against Quaker--negligence, breach of contract, breach of a
claimed duty of good faith and fair dealing, and defamation. She also brought four causes of
action against SmithKline--negligence, tortious interference with contract, breach of a claimed duty
of good faith and fair dealing, and defamation. To merit a summary judgment on each of her
claims, Quaker and SmithKline had the burden of conclusively negating at least one essential
element of each claim or establishing an affirmative defense as a matter of law. Citizens First
Nat'l Bank v. Cinco Exploration Co., 540 S.W.2d 292, 294 (Tex. 1976); Swilley v. Hughes, 488
S.W.2d 64, 67 (Tex. 1972). 



Release


 Both Quaker and SmithKline argued on summary judgment that they were protected
from liability by the release, waiver, and indemnity provisions of the "Pre-Employment Consent
to Drug Screening" form Doe signed. Doe attacks this ground for summary judgment in her
seventh point of error. Doe argues that the waiver is void as a matter of public policy, is invalid
on its terms and under the circumstances, and is ineffective by its terms as a release of claims
against SmithKline.

 The waiver contained the following exculpatory language: "I consent to the release
of the drug screen results to authorized Quaker representatives for appropriate review. I release
and agree to hold harmless Quaker, its employees and its agents, from any liability to me based
on the results of the drug screening." The dates appearing on the waiver indicate that Doe signed
it during the recruiting and interview process and before Quaker made its offer to Doe.

 As discussed more fully below, we conclude that Quaker is not liable as a matter
of law on each of Doe's alleged causes of action. Accordingly, as to Quaker, we do not reach the
question of whether the release is enforceable. 

 As to SmithKline, we have concluded below that SmithKline may be liable only
under Doe's negligence and tortious interference with contract causes of action. We conclude that
the waiver is unenforceable to shield SmithKline for several reasons. First, the release may well
be void as a matter of public policy. Parties may contract to release future liability unless the
agreement is unconstitutional, violates statutory law, or is against public policy. Allright, Inc. v.
Elledge, 515 S.W.2d 266, 267 (Tex. 1974). To determine "whether a contractual agreement is
against public policy we look to the relationship between the parties." Id. If a disparity of
bargaining power exists in this relationship, the agreement will not be enforced. Id. A disparity
in bargaining power exists when the releasing party "has no real choice" or is "practically
compelled" to accept the agreement. Id.; Crowell v. Housing Auth., 495 S.W.2d 887, 889 (Tex.
1973). The leading cases present relationships on opposite ends of the range of bargaining power. 
A disparity of bargaining power and lack of free choice exist where a poor individual contracts
with a housing authority for a low-income apartment. Crowell, 495 S.W.2d at 889. However,
in a situation where an individual contracts with a parking lot owner for parking privileges, no
disparity of bargaining power or lack of choice exists. Allright, 515 S.W.2d at 268. The
evidence in the summary-judgement proof presents a situation in which the relative power of the
parties is somewhere between that of the parties in the Crowell and Allright cases. We need not
decide, however, if the waiver is void as against public policy because the waiver is not an
effective release of liability.

 Texas has adopted the "express-negligence" doctrine which requires an indemnity
agreement to expressly state that it applies to "negligence" to be effective as a release of such
liability. Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987). Although Ethyl
involved an indemnity agreement, the same policy considerations are present in the context of a
prospective release from liability. Accordingly, we conclude that the express-negligence doctrine
equally applies to such a release. See K & S Oil Well Serv., Inc. v. Cobot Corp., 491 S.W.2d
733, 739 (Tex. Civ. App.--Corpus Christi 1973, no writ). The language of the waiver, set out
above, does not expressly release liability for negligence. Accordingly, even assuming that the
waiver is otherwise effective, we conclude that it does not constitute an effective release from
liability for negligence.

 Finally, SmithKline has not demonstrated that it is protected under the terms of the
waiver. SmithKline was not expressly named in the waiver; therefore, it could only be shielded
as an agent of Quaker. SmithKline's summary-judgment proof does not demonstrate the an
agency relationship existed between it and Quaker a matter of law. Indeed, from the evidence in
the record and the terms of the contract between Quaker and SmithKline, SmithKline appears to
be an independent contractor rather than an agent. Page Petroleum, Inc. v. Dresser Indus., Inc.,
36 Tex. Sup. Ct. J. 737, 739 (Apr. 7, 1993); see also Summers v. Skillern & Sons, Inc., 381
S.W.2d 352, 356 (Tex. Civ. App.--Waco 1964, writ dism'd w.o.j.); but cf. Getty Oil Co. v.
Insurance Co. of N. Am., 845 S.W.2d 794, 806 (Tex. 1992). Accordingly, we conclude that
SmithKline has failed to demonstrate that it falls within the terms of the waiver. 

 For the above reasons, we sustain Doe's seventh point of error as to SmithKline;
we do not reach this point as to Quaker. Because this point is not dispositive, we must examine
each of the possible grounds for the summary judgment.



Breach of Contract


 Doe's first point of error argues that summary judgment was not proper because
the summary-judgment proof supports a cause of action against Quaker for breach of contract. 
Quaker argued for summary judgment on the grounds that: (1) no contract ever existed between
Quaker and Doe because she failed to satisfy the condition precedent of satisfactorily passing the
drug test as required by company policy; (2) even if a contract existed, Quaker was not liable for
any breach under the "employment-at-will" doctrine; and (3) because Doe was ultimately denied
employment for good cause (her misrepresentations about taking her roommate's prescription
painkillers), there was no breach of contract. 

 Quaker's offered Doe employment for an indeterminate period. As such, the offer
was for employment at will. Under the "employment at will" doctrine, absent an express contract
term to the contrary, Quaker could terminate Doe's employment at any time with or without cause
and without liability. Winters v. Houston Chronicle Publishing Co., 795 S.W.2d 723 (Tex.
1990); East Line & R.R. v. Scott, 10 S.W. 99, 102 (Tex. 1888); Moulder v. Southwestern Bell
Tel. Co., 665 S.W.2d 175, 177 (Tex. App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.). The
courts have recognized only one limited exception to this common-law rule--termination solely
because of the employee's refusal to perform an illegal act involving criminal penalties. 
Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 459 (Tex. 1991); Winters, 795 S.W.2d
at 724; Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733 (Tex. 1985); Hancock v. Express One
Int'l, Inc., 800 S.W.2d 634 (Tex. App.--Dallas 1990, writ denied); Morgan v. Jack Brown
Cleaners, Inc., 764 S.W.2d 825, 826 (Tex. App.--Austin 1989, writ denied). The legislature has
placed additional restrictions on the doctrine in certain situations. Winters, 795 S.W.2d at 724. 
However, none of the common-law or statutory exceptions apply under the facts of this case.

 Assuming that a contract existed between Quaker and Doe, Quaker was entitled,
without risk of liability, to fire Doe without a reason or for an arbitrary reason. If Doe had failed
a drug test, for whatever reason, after starting her job, Quaker would be within its rights and
would not breach the contract by terminating Doe. We see no reason to place greater contractual
duties on Quaker in a pre-employment situation. Moreover, the summary-judgment proof shows
that Quaker had grounds to withdraw its offer to Doe, because, as discussed previously, she
admitted having lied to Quaker representatives about taking her roommate's prescription
medication. Accordingly, under the employment-at-will doctrine, Quaker is not liable for any
breach simply because it revoked its offer or decided not to hire Doe on her reapplication.

 Doe argues that Quaker was obligated by an implied term of the offer to provide
a reasonable opportunity to pass the drug test. By failing to provide safeguards to prevent a so-called "poppy seed positive," Doe argues Quaker breached that obligation. Quaker's written offer
to Doe merely stated that she must satisfactorily complete the drug test "per company policy." 
Texas courts have refused to imply a duty of good faith and fair dealing in employment contracts. 
Lumpkin v. H & C Communications, Inc., 755 S.W.2d 538, 540 (Tex. App.--Houston [1st Dist.]
1988, writ denied); see also English v. Fisher, 660 S.W.2d 521, 522 (Tex. 1983). We decline
to imply the good faith and fair dealing or any other implied contractual obligations to the
immediate situation.

 Finally, Doe argues that the employment-at-will doctrine, if applicable, only goes
to the issue of damages. Doe contends that the doctrine would negate only her claim for expected
salary and, at a minimum, she was entitled to recover the $4,000 bonus. Because we have
determined that the employment-at-will doctrine applies to this situation, we conclude that, under
the facts presented, Quaker terminated the relationship without liability before Doe had a right to
the bonus. We overrule Doe's first point of error.



Negligence


1. SmithKline

 Doe's second point of error alleges that the trial court erred in rendering summary
judgment because the summary-judgment proof supports a cause of action against SmithKline for
negligence. SmithKline argued on summary judgment that it was not liable under negligence
because it owed no duty, did not breach any duty owed to Doe, and did not proximately cause any
damage to Doe. To recover under a negligence cause of action, the plaintiff must prove the
defendant owed a legal duty, a breach of that duty, and that damages proximately resulting from
the breach. Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 312 (Tex. 1983). The existence of a
duty the defendant owed to the plaintiff is a question of law for the court. Greater Houston
Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990); Otis, 668 S.W.2d at 312.

 The Texas Supreme Court has described the existence of a "duty" as follows: "[I]f
a party negligently creates a situation, then it becomes his duty to do something about it to prevent
injury to others if it reasonably appears or should appear to him that others in the exercise of their
lawful rights may be injured thereby." Buchanan v. Rose, 159 S.W.2d 109, 110 (Tex. 1942). 
More recent cases have described duty as a function of several interrelated factors--the risk,
foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct--of
which the foremost and dominant consideration is the foreseeability of the risk. Greater Houston
Transp., 801 S.W.2d at 525; El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987); Otis,
668 S.W.2d at 309; Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983). If a risk
is foreseeable, it gives rise to a duty of reasonable care. El Chico, 732 S.W.2d at 312.

 SmithKline argues that Doe's cause of action is only for a failure to act or
"nonfeasance" which is not actionable under Texas law. This argument relies on the case law
holding that innocent bystanders are under no legal duty to act. Buchanan, 159 S.W.2d at 110. 

 As stated in Otis, "[c]hanging social conditions lead constantly to the recognition
of new duties." Otis, 668 S.W.2d at 310. If an individual has "at least partially created the
danger" in issue, he is under an affirmative duty to act. El Chico, 732 S.W.2d at 306. We
conclude that SmithKline is not merely an innocent bystander, but rather, it partially created a
dangerous situation. As information services become more prevalent in our economy and society,
the information providers should be held accountable for the information they provide. Such
information should be complete and not misleading. Credit-reporting agencies have long been
held to the exercise of due care in securing and distributing information concerning the financial
standing of individuals, firms, and corporations. See e.g., Bradstreet Co. v. Gill, 9 S.W. 753,
757 (Tex. 1888). By making representations that implied the infallibility of its tests and by failing
to provide any information to its customers on the possible implications of the raw test results,
SmithKline created a possibility of misinterpretation of the information it provides.

 SmithKline marketed its services to employers as "the largest and most quality-conscious network of clinical laboratories in North America" and "the most accurate, dependable
and cost-effective substance-abuse testing on the market." SmithKline represented to Quaker that
"a positive result from [SmithKline] can be accepted with virtual certainty as evidence of drug
use." By these statements, SmithKline invited employers such as Quaker to rely on SmithKline's
superior knowledge and resources in the area of drug testing and to rely on the test results as
authoritative. (6) It is foreseeable that employers would interpret a raw result showing a positive
opiate test result as exclusively indicating illegal or illicit drug use and would not consider the
possibility of poppy seed consumption or other anomalies. It is also foreseeable that the lack of
full disclosure of all possible implications of a positive opiate test result could lead an employer
to dismiss an employee or to revoke a pending offer. 

 Doe has claimed negligence not only from SmithKline's failure to act. Doe alleged
negligence by an affirmative act of SmithKline--destroying her urine sample contrary to her
instructions and before it could be tested by an independent laboratory. Based on the above
analysis, we conclude that SmithKline has failed to conclusively demonstrate that it owed no duty
to Doe.

 Proximate cause consists of cause-in-fact and foreseeability. El Chico, 732 S.W.2d
at 313; Exxon Corp. v. Quinn, 726 S.W.2d 17, 21 (Tex. 1987). Cause-in-fact is "but for cause,"
meaning the negligent act or omission must be a substantial factor in bringing about the injury,
and without which no harm would have occurred. El Chico, 732 S.W.2d at 313; Nixon, 690
S.W.2d at 549. Foreseeability means that the defendant, as a person of ordinary intelligence,
should have anticipated the dangers his negligent act creates for others. El Chico, 732 S.W.2d
at 313; Nixon, 690 S.W.2d at 550. Foreseeability does not require that the defendant foresee the
particular incident, but only that he reasonably anticipate the general character of the injury. El
Chico, 732 S.W.2d at 313; Nixon, 690 S.W.2d at 550. Construing all disputed facts and
inferences in favor of Doe, we conclude that "but for" SmithKline's failure to provide some
safeguards or additional information, Doe failed her drug test because she consumed of poppy
seeds, and but for Doe's positive test result, Quaker would not have withdrawn its offer. 
Quaker's policy required an automatic revocation of an offer on a positive test. As discussed
above, the fact that the testing SmithKline conducted could adversely affect the employees of its
customers was foreseeable. We conclude that SmithKline has not conclusively demonstrated the
absence of proximate cause. 

 SmithKline argues that it only provides raw test results and is forbidden by Illinois
law from making any interpretation of those results. See Ill. Ann. Stat. ch. 111 1/2, para. 627-102 (Smith-Hurd 1990). We do not find this argument persuasive. We find reasonable Doe's
assertion that to most individuals and many employers, a positive drug test result exclusively
indicates illegal drug use by the subject. The record evidence indicates that, in fact, this was
Quaker's perception of drug testing. We believe that SmithKline is obligated to provide sufficient
information on possible test anomalies to prevent this misleading perception. We do not believe
that providing such information would run afoul of Illinois law. By requiring such information
on a general basis, the law does not require that SmithKline interpret individual results; the law
requires that sufficient information be provided on a general basis to prevent the potential
misleading interpretation of the information it provides. For the above reasons, we sustain Doe's
second point of error.

2. Quaker

 Doe's third point of error alleges that the trial court erred in rendering summary
judgment because she has stated a cause of action against Quaker for negligence. Quaker argued
on summary judgment that it owed no duty or, alternatively, met any duty it owed to Doe. In
order to impose a tort duty upon parties to a contract, the court must find that a special
relationship exists between the parties. Sanus/New York Life Ins. Plan, Inc. v. Dube-Seybold-Sutherland Management, Inc., 837 S.W.2d 191, 199 (Tex. App.--Houston [1st Dist.] 1992,
n.w.h.); see also Aranda v. Insurance Co. of N. Am., 748 S.W.2d 210, 212 (Tex. 1988). Some
contracts do involve a special relationship that may give rise to duties enforceable as torts. 
Southwestern Bell Tel. Co. v. Delanney, 809 S.W.2d 493, 494 n.1 (Tex. 1991). An employment
situation governed by the employment-at-will doctrine is not such a situation. Wal-Mart Stores,
Inc. v. Coward, 829 S.W.2d 340, 344 (Tex. App.--Beaumont 1992, writ denied). Doe cites
a line of cases beginning with the Texas Supreme Court's decision in Montgomery Ward & Co.
v. Scharrenbeck, 204 S.W.2d 508 (Tex. 1947), for the proposition that Quaker owed her a tort
duty in addition to its obligations under the contract. See Delanney, 809 S.W.2d at 494-95; Jim
Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986); Scharrenbeck, 204 S.W.2d at
508. We disagree. Doe relies on the statement in Scharrenbeck that "[a]ccompanying every
contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness
the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort,
as well as a breach of the contract." 204 S.W.2d at 510 (quoting 38 Am. Jur. Negligence § 20
(1941)). Although Scharrenbeck may be read broadly to support Doe's proposition, later
decisions have limited its scope. In Jim Walter Homes the court stated:



The acts of a party may breach duties in tort or contract alone or simultaneously
in both. The nature of the injury most often determines which duty or duties are
breached. When the injury is only the economic loss to the subject of the contract
itself, the action sounds in contract alone.



711 S.W.2d at 618. The court further developed this distinction in Delanney:



If the defendant's conduct--such as negligently burning down a house--would give
rise to liability independent of the fact that a contract exists between the parties,
the plaintiff's claim may also sound in tort. Conversely, if the defendant's
conduct--such as failing to publish an advertisement--would give rise to liability only
because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds
only in contract.



809 S.W.2d at 494. These principles are applicable in an employment-contract situation. See
Wal-Mart, 829 S.W.2d at 344. Therefore, in determining the nature of the plaintiff's claim, we
look to the nature of the loss or damage and the independence of the alleged tortious conduct from
the contract. Id. at 495-95; see also W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David
C. Owen, Prosser and Keeton on Torts § 92, at 656-58 (5th ed. 1984).

 In the instant cause, Doe's alleged loss is her expected earnings as a Quaker
employee. Doe seeks by her negligence claim to recover only the benefits of her alleged
agreement with Quaker. Accordingly, her claim sounds only in contract. Doe's other alleged
damages--compensatory damages for harm to her reputation, exemplary damages for lost earning
capacity due to her reduced employment potential, and damages for emotional distress--flow from
her defamation cause of action. Doe could recover emotional distress damages under her
negligence claim, in this case, however, those damages are not available as a matter of law.

 As a general rule, mental anguish does not constitute an element of damages that
may be recovered in an action either for breach of contract or for a tort based on a right growing
out of a breach of contract. Otten v. Snowden, 550 S.W.2d 758, 759-60 (Tex. Civ. App.--San
Antonio 1977, no writ); see also Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan, 705 S.W.2d
707, 710 (Tex. App.--Texarkana 1985, writ ref'd n.r.e.), cert. denied, 480 U.S. 906 (1987); City
of Dallas v. Brown, 150 S.W.2d 129, 131 (Tex. Civ. App.--Dallas 1941, writ dism'd). There is
no independent right to recover for negligently inflicted emotional distress; mental-anguish
damages may only be compensated in connection with the defendant's breach of some other duty
imposed by law. Boyles v. Kerr, 36 Tex. Sup. Ct. J. 874, 877 (May 5, 1993). Quaker's alleged
negligence--failing to provide adequate safeguards in its pre-employment drug screening--could not
arise apart from the agreement alleged between it and Doe. We conclude that contract law
controls Doe's claims against Quaker exclusively. Accordingly, we overrule Doe's third point
of error. 



Tortious Interference with Contract


 Doe, in her fourth point of error, contends that summary judgment was improper
because she has established a cause of action against SmithKline for tortious interference with
contractual relations.

 In its motion for summary judgment, SmithKline raised no grounds specifically
attacking Doe's claim of tortious interference with contract. The trial court granted a summary
judgment that Doe take nothing by her claims, including her tortious-interference claim. 

 The elements of a cause of action for tortious interference are: (1) an existing
contract; (2) willful and intentional interference with that contract; (3) which proximately caused
the plaintiff harm; and (4) actual damages or loss. Southwestern Bell Tel. Co. v. John Carlo
Texas, Inc., 843 S.W.2d 470, 472 (Tex. 1992); Victoria Bank & Trust Co. v. Brady, 811 S.W.2d
931, 939 (Tex. 1991); Juliette Fowler Homes v. Welch Assocs., 793 S.W.2d 660, 664 (Tex.
1990).

 Texas law protects both existing and prospective contracts from interference. 
Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989); Juliette Fowler Homes, 793
S.W.2d at 665. A contract for employment-at-will may give rise to a cause of action against a
third party for tortious-interference with the contract. Sterner, 767 S.W.2d at 688-89. Even an
unenforceable contract may serve as the basis for a tortious-interference claim if the contract is
not void; in other words, unenforceability of the contract is not in itself a defense to tortious
interference. Juliette Fowler Homes, 793 S.W.2d at 664; Clements v. Withers, 437 S.W.2d 818,
821 (Tex. 1969). In the immediate case, we are presented with a prospective contract for
employment-at-will. We conclude that tortious interference may apply in this situation.

 We have concluded above that SmithKline has failed to conclusively establish its
asserted summary-judgment grounds that it was expressly released from liability, that it owed no
duty to Doe, and that it did not proximately cause Doe's damages. SmithKline asserted no other
grounds that may be applied to Doe's tortious-interference claim. Therefore, we sustain Doe's
fourth point of error.



Defamation


 In her fifth point of error, Doe argues that summary judgment was improper
because she established a cause of action for defamation. Doe asserts that Quaker and SmithKline
libeled or slandered her by placing her in a situation in which she felt obligated to disclose to
other prospective employers the circumstances of the drug test and the revocation of the offer. 
Quaker argued below that Doe had no action for defamation because its statements were truthful
and not defamatory as a matter of law and because Doe herself published the statements to third
parties. SmithKline asserted below that it was not liable for defamation because its statements
were absolutely privileged as truthful or, alternatively, its statements were conditionally privileged
because SmithKline owed Quaker a duty under their contract to report the test results truthfully.

 For an action to exist for libel or slander, the statement must be published to third
parties. Lyle v. Waddle, 188 S.W.2d 770, 771 (Tex. 1944); Houston Belt & Terminal Ry. Co.
v. Wherry, 548 S.W.2d 743, 751 (Tex. Civ. App.--Houston [1st Dist.] 1976, writ ref'd n.r.e.),
cert. denied, 434 U.S. 962 (1977). In this case, Doe alleges that this publication occurred when
she felt compelled to explain the withdrawal of Quaker's offer to other potential employers. The
Texas Supreme Court has yet to adopt the view that publication may occur by "self-defamation." 
Lyle, 188 S.W.2d at 772; but see David P. Chapus, Annotation, Publication of Allegedly
Defamatory Matter by Plaintiff ("Self-Publication") as Sufficient to Support Defamation Action,
62 A.L.R.4th 616 (1988). The rule remains that "[i]f the publication of which the plaintiff
complains was consented to, authorized, invited or procured by the plaintiff, he cannot recover
for injuries sustained by reason of the publication." Lyle, 188 S.W.2d at 772.

 Doe cites two court of appeals cases to support her theory of "self-defamation." 
See Chasewood Constr. Co. v. Rico, 696 S.W.2d 439 (Tex. App.--San Antonio 1985, writ ref'd
n.r.e.); First State Bank v. Ake, 606 S.W.2d 696 (Tex. Civ. App.--Corpus Christi 1980, writ ref'd
n.r.e.). Both of these cases rely on comment m to section 577 of the Restatement (Second) of
Torts, set out in full as follows:



One who communicates defamatory matter directly to the defamed person, who
himself communicates it to a third party, has not published the matter to third party
if there are no other circumstances. If the defamed person's transmission of the
communication to the third person was made, however, without an awareness of
the defamatory nature of the matter and if the circumstances indicated that
communication to a third party is likely, however, a publication may properly be
held to have occurred. 



Restatement (Second) of Torts § 577, cmt. m (1977) (emphasis added). The Rico and Ake
opinions omit the emphasized portion of comment m from the discussion. This emphasized
portion is essential as it constitutes the first hurdle of a two-part test for "self-defamation": (1)
the defamed person was unaware of the defamatory nature of the matter; and (2) the circumstances
indicated that the communication to the third party would be likely. Rico, 696 S.W.2d at 449
(Reeves, J., dissenting). Unless the emphasized portion is considered, the defamed party is under
no duty to mitigate its damages by refraining to self-publish known defamatory statements.

 In the instant cause, the summary-judgment proof indicates that Doe immediately
knew of the defamatory implications of the statement. Accordingly, Doe failed to satisfy the first
part of the two-part test. Further, although Doe claims she felt compelled to disclose the
statements, there is no indication that Doe was compelled by law or other authority to repeat the
statements made by SmithKline or Quaker. While we are aware of non-Texas authority allowing
"self-defamation" claims under only a foreseeability test, the Texas Supreme Court has yet to
adopt or approve such a broad cause of action. We decline to do so and overrule Doe's fifth point
of error.



Breach of Duty of Good Faith and Fair Dealing


 In her sixth point of error, Doe asserts that summary judgment was improper
because she has established a cause of action against each of the defendants for breach of a duty
of good faith and fair dealing.

 Both defendants urged on summary judgment that they owed no duty of good faith
and fair dealing to Doe. As stated above, Texas courts have refused to imply a duty of good faith
and fair dealing in employment situations. Lumpkin, 755 S.W.2d at 540. Doe urges this court
to impose a duty of good faith and fair dealing because "a special relationship is created by the
imbalance of bargaining power when compulsory, intrusive, and complex medical procedures are
required." Doe claims that this "special relationship" was created by the imbalance of bargaining
power between the parties, rather than the employer-employee relationship. See English, 660
S.W.2d at 525 (Spears, J., concurring). We do not find the relationship involved in this case
analogous to the fiduciary or quasi-fiduciary relationships involved in the cases cited by Justice
Spears in his concurring opinion in English. We overrule Doe's sixth point of error.



CONCLUSION


 We affirm the portions of the trial court's judgment granting Quaker a summary
judgment on all Doe's claims and granting SmithKline a summary judgment on Doe's claims for
defamation and breach of the duty of good faith and fair dealing. We reverse the portions of the
trial court's judgment granting SmithKline a summary judgment on Doe's claims for negligence
and tortious interference with contract. We remand for further proceedings consistent with this
opinion. 



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed in Part; Reversed and Remanded in Part

Filed: June 2, 1993

[Publish]
1. [1] It is undisputed that Doe could satisfy the second of these conditions.
2. [2] Doe initially named AOHC as a defendant in this cause, but AOHC was dismissed after
the discovery that AOHC acted only as a repository for her sample. Doe does not appeal the
dismissal of AOHC.
3. [3]  The pretesting questionnaire inquired about general types of prescription and
nonprescription medications; it did not inquire about food intake or poppy seed consumption. 
4. [4]  SmithKline's parent corporation SmithKline Beecham Corporation is also a party to this
appeal. As these entities have essentially litigated this case as one party, we refer to them
collectively as "SmithKline."
5. [5] Doe does not dispute that the test was conducted by proper technical procedures and by a
valid two-step testing methodology--Enzyme Multiplied Immunoassay Test ("EMIT") screening
with a confirmatory gas chromatography, mass spectrometry ("GC/MS") test.
6. [6] An employer's high level of reliance on the expertise of testing labs is supported by the
testimony of the Quaker officials who supervised its pre-employment drug screening program
that Quaker officials contacted SmithKline for information on the viability of Doe's
explanations for her positive test.