MONTGOMERY WARD & COMPANY ET AL V. G. W. SCHARRENBECK ET AL.

No. A-1229. Decided October 1, 1947.
(204 S. W., 2d Series, 508.)

*Woodruff & Holloway, Gib Calloway* and *R. R. Holloway*, all of Brownwood, for petitioners.

*E. M. Davis, Wilkinson & Priffin,* of Brownwood, for respondents.

Mr. Justice Brewster delivered the opinion of the Court.

G. W. Scharrenbeck et al, respondents, sued Montgomery Ward & Company and its employee, Marcus H. Sessions, petitioners, for damages arising from the burning of their home because of the negligence of Sessions in repairing and adjusting a kerosene hot-water heater therein. Upon favorable jury findings respondents were awarded judgment against both petitioners, which was affirmed by the court of civil appeals. 199 S. W. (2d) 830.

Scharrenbeck bought the residence from one Willingham and moved into it on February 7, 1943. The heater, purchased by Willingham from Montgomery Ward & Co. some 16 months theretofore and continuously used by him, had been temporarily disconnected while Scharrenbeck was acquiring the place. Being unable to light the heater, Scharrenbeck called in a plumber, but the latter was not familiar with the heater and could not put it in operation.

Upon the plumber's advice to consult Montgomery Ward & Co., Scharrenbeck, on February 9, reported the condition of the

heater to the manager of Montgomery Ward's store at Brownwood, who referred him to Sessions, the salaried head of the store's repair department. The guaranty under which the heater was sold having expired, Sessions agreed to put the heater in operation provided Scharrenbeck would pay Montgomery Ward & Co. for his services. It is undisputed that Sessions was authorized to make this agreement for his company and that the work subsequently done by him for Scharrenbeck was within the scope of his employment.

The heater was installed in the bathroom and was fueled through a line from an outside tank. The heater was cylindrical in form, with a hollow iron pipe some six inches in diameter extending vertically through it and on up through the ceiling some two feet above the roof. In the lower part of the heater were a burner pot, from which the heater was lighted, a constant-level fuel valve and thermostat.

Sessions found that the fuel was not flowing properly through the constant-level and that some of the valve parts were corroded. So he removed, cleaned and replaced the corroded parts, decided that the fuel was flowing properly, and informed Scharrenbeck that the heater was ready to be lighted. As Sessions did not know how to light the heater, Scharrenbeck lit it, following the directions given on an attached metal plate; and there is no contention that he did not follow those directions.

After the kerosene was thus lighted, Sessions stayed with the heater for an hour and a half or two hours, waiting to see that the water heated properly; but the evidence is conflicting as to whether or not he then turned up the heat on the burner. After that period of waiting, the roof caught fire some 18 inches or two feet from the heater flue, the flames apparently being whipped out of, and away from, the flue by a strong north wind. The house and its contents were destroyed.

Petitioners complain of the action of the trial court in overruling a number of special exceptions which they filed against respondents' allegations of negligence on the part of Sessions in repairing and adjusting the heater. However, some of the acts and omissions alleged were not submitted to the jury and some of those submitted are immaterial so we need not consider the exceptions to them.

In relation to those exceptions which are relevant, the substance of respondents' allegations was that when they moved

into the house they found the heater so out of condition that it would not heat water, which fact they reported to Montgomery Ward & Company's manager at Brownwood; that the manager informed them that his company kept Sessions employed "to make such repairs and do whatever was necessary to put such heaters in good operating condition," which it would do without charge if the guaranty given Willingham when the heater was sold was still in force, otherwise it would have Sessions make the necessary repairs and put the heater in working condition but Scharrenbeck would have to pay it for his services when the work was completed; that the manager then referred them to Sessions, who agreed to make the necessary repairs and put the heater in operation the next day, on condition that they pay Montgomery Ward & Co. for his services, which they agreed to do; and that Sessions came the next day to their home to make the repairs and to adjust the heater, or burner, and to put it in operation. Then the petition proceeds: "After working with said heater or burner, for some time, he advised plaintiffs that he had adjusted said heater, and burner, and that it was ready to light, and directed plaintiff, G. W. Scharrenbeck to light the oil in the oil box under said burner. Thereafter, he spent more than an hour working with, and attempting to regulate and repair said burner. He advised plaintiffs that the heater, or burner, was working satisfactorily, but that he was regulating it so as to heat the water more quickly. Actually, he did not repair or adjust said burner so it would heat the water in the tank, but he negligently caused said burner to set fire to plaintiffs' house, and to burn the same and plaintiffs' garage to the ground." Then it is alleged that the fire that destroyed the house "was proximately caused by each of the following negligent acts of defendant, to-wit: (a) Failure to regulate said heater and burner so as to prevent it from setting said house on fire. * * * (d) Failure to keep a proper watch on said heater and burner and the fire therein to prevent the same from spreading to plaintiffs' house and setting it on fire."

To the allegation that Sessions negligently caused the burner to set fire to the house, petitioners excepted because the pleading "fails to state any fact upon which any charge of negligence can be based," "fails to state wherein the defendant did any act which he should not have done" or any act which he failed to do, and fails to allege the breach of any duty.

As to the specific allegations that Sessions was negligent in failing to keep a proper watch on the heater while repairing

it, petitioners excepted because it fails to state any facts imposing any duty upon Sessions to keep a watch on the heater and burner, and the fire therein to prevent it from setting the house on fire and "fails to state any reason why the defendant should have so anticipated the danger of plaintiffs' house catching on fire so as to require defendants to keep watch for the purpose of preventing such occurrence."

As against the allegation that Sessions was negligent in failing to regulate the heater and burner so as to prevent it from setting the house on fire, the grounds of exception were: "(1) Said allegations, and plaintiffs' petition as a whole, wholly fails to state any facts charging the defendant Sessions with any duty to regulate said heater and burner so as to prevent it from setting·plaintiffs' house on fire; (2) said allegation appears to pre-suppose that the heater and burner were calculated to set the house on fire but without showing any duty on the part of Sessions to anticipate or prevent such occurrence; (3) said allegation wholly fails to state any wrongful act or any breach of duty on the part of Sessions constituting negligence."

■ We think the elementary law which must determine the sufficiency of respondents' allegations is well stated in 38 Am. Jur., sec. 20, p. 662, as follows: "A contract may create the state of things which furnishes the occasion of a tort. The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract. Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care. Thus, a person who contracts to make repairs can be held liable for his negligence in doing the work. * * * The sound rule appears to be that where there is a general duty even though it arises from the relation created by, or from the terms of a contract, and that duty is violated, either by negligent performance or negligent nonperformance, the breach of the duty may constitute actionable negligence."

■ We have concluded that respondents' allegations state a cause of action for tort because they show that the petitioners owed a duty to the Scharrenbecks, a failure on their part to exercise proper care in its performance, and an injury to the

Scharrenbecks. See San Antonio & A. P. Ry. Co. v. Morgan, 92 Texas, 98, 46 S. W., 28.

Petitioners agreed, according to these allegations, to put the heater in operation and Sessions was engaged in that very work at the time the fire destroyed the house; and the fire occurred because, while doing that work, he failed to keep a proper watch on the heater and failed so to regulate the heater and burner as to prevent it from setting the house on fire. While these alleged specific acts of negligence are negative, nevertheless torts may be based on nonfeasance or omissions to act as well as on acts of commission. 62 C. J., p. 1104, sec. (19) 3. Although it is not alleged specifically that Sessions was under any duty to keep a proper watch on the heater or so to regulate it as to prevent it from setting the house on fire, we think that duty followed from the contract and from Sessions' attempted performance thereunder. Having undertaken as an expert and for a consideration to repair and adjust the heater, Sessions and his principal owed respondents the duty, as a matter of course, not negligently to burn their house in the undertaking. That duty arose by implication, hence it did not have to be alleged in so many words. And since petitioners knew that the heater, fueled by kerosene, was already out of order, they should have anticipated in the ordinary course of human experience that there might be some danger to respondents' property in putting it in order, as they agreed and undertook to do. Therefore, the trial court did not err in overruling the special exceptions.

■ Petitioners also complain that the trial court erred in overruling their motion for instructed verdict and in holding that the jury's findings of negligence and proximate cause were supported by the evidence. Of course, our consideration of that question is limited to a decision as to whether there was any evidence to raise those issues and to support the findings thereon. Katz, Inc., v. Walsh & Burney Co. et al, 142 Texas, 232, 177 S. W. (2d) 49. And we can consider only those facts and circumstances which tend to sustain the verdict. Cartwright v. Canode, 106 Texas, 502, 171 S. W., 696.

As to the issues under consideration, the jury found that Sessions failed to keep a proper watch on the fire in the heater, which was negligence and a proximate cause of the fire; that he was negligent in failing to regulate the heater and burner so as prevent it setting the house on fire, which was a proximate cause of the fire.

We have carefully studied the statement of facts, and we cannot say as a matter of law that there is no evidence to support those findings. Sessions was on the scene for an hour and a half or two hours in full control of the heater, and, according to his own admission, doing what he thought should be done. According to Sessions, when he first arrived at the Scharrenbeck home, he cleaned some parts in the stove and dried and replaced them, thereby correcting a deficiency in the flow of oil to the burner; but he thereafter did nothing to the heater. According to Scharrenbeck, Sessions stepped to the door a minute or two before the fire and said, "I have turned it up to make it heat quicker and it is all right now." Sessions did not deny making this statement, although he did deny adjusting the amount of heat, and there was testimony to the effect that there was no way of regulating the speed with which the stove heated. Nevertheless, this testimony raised an issue of fact as to whether Sessions did in fact turn up the heat or adjust the heater in some way in an attempt to speed up the heating process just before the fire started on the roof. The jury evidently believed Scharrenbeck and concluded that, under the circumstances, Sessions' action in attempting to gain more heat constituted negligence, especially since Sessions admittedly took no active steps to guard against danger of fire.

Moreover, Sessions testified that he took no precautions of any kind, either before or during his work on the heater, to see if the burner was safe or to prevent the heat from spreading to the house, other than to check the flow of oil to the burner. E. L. Wells, Montgomery Ward & Company's assistant general service manager, testified that when a heater has been off for several days in the winter time, it will necessarily burn a flame at maximum height much longer than it will under normal circumstances; that a heater of the Scharrenbeck type, after being in operation for more than a year will accumulate soot in the pipe and up through the flue, which would be likely to catch on fire from a hot flame; that if he had gone out to repair the heater and put it in operation, he "possibly" would have investigated the condition of the flue before lighting the burner. That would seem to furnish some support for the jury's conclusion that in his admitted failure to take precautions, Sessions, an expert repairman working on a defective heater, was guilty of negligence.

Sessions also testified that there was a "butter-fly" vent between the heater and the ceiling which automatically regulated the draft of heat from the burner. And, although he testified

that he examined it occasionally and found it working and properly balance, he said that the vents he had examined on other kerosene heaters would work back and forth oftener than the one on the Scharrenbeck heater did. There was evidence that Sessions knew that a strong north wind was blowing while he was watching the heater, as well as evidence that such a wind might have some tendency to make operations connected with a flue more dangerous. The jury may have determined that those circumstances required Sessions to keep a closer watch on the fire in the burner and to be more careful in regulating the heat as he attempted to repair and adjust the heater and burner.

We have concluded that the record reflects at least some evidence that Sessions was negligent in the respect mentioned, which negligence proximately caused respondents' loss. Therefore we cannot disturb the jury's findings.

It is unnecessary to decide whether the doctrine of res ipsa loquitur is applicable to this case, so we expressly reserve any decision of that question.

Both judgments below are affirmed.

Opinion delivered October 1, 1947.

No motion for rehearing filed.