**MERCURY LIFE INSURANCE COMPANY,
Appellant,**

v.

Nellie Mae PARKER, Appellee.

No. 5512.

Court of Civil Appeals of Texas.

El Paso.

Feb. 14, 1962.

Rehearing Denied March 7, 1962.

Walter G. Lagerquist, Jr., San Antonio, for appellant.

Porter, Madalinski & Mondin, San Antonio, for appellee.

LANGDON, Chief Justice.

This is an appeal by defendant, Mercury Life Insurance Company, from an adverse judgment rendered by County Court at Law No. 3, Bexar County, in a suit brought by plaintiff, Nellie Mae Parker, against such insurance company to recover certain hospital benefits alleged to be due her under a policy of insurance issued by defendant. Such policy provided for a daily benefit of $10.00 for hospital confinement after the second day of such confinement. It did not limit the number of periods of hospitalization covered, but did provide that there must be an interval of 30 days between hospital entries. It also specified that no coverage would be afforded to persons over 60 years of age.

Plaintiff alleged confinement in St. Mary's Hospital from April 20, 1956 to April 22, 1956, and from April 30, 1956 to May 11, 1956; and confinement in St. Joseph's Hospital from May 12, 1956 to June 9, 1956. By amended petition, plaintiff sought recovery of $10.00 per day for 38 days of the confinement between April 30, 1956 and June 9, 1956.

Trial was had before the court without a jury, resulting in a judgment awarding plaintiff $380.00 plus twelve per cent penalty, six per cent interest and $250.00 in attorneys' fees. From this judgment the defendant has duly perfected its appeal, and

this case is properly before us. The parties will be referred to as they were in the trial court.

After the filing of plaintiff's original petition, defendant filed a general denial, and then filed its first amended original answer, setting up the following affirmative defenses: That plaintiff failed to give written notice of sickness on which claim was based within ten (10) days after the commencement of disability from such sickness, as required by the contract of insurance; and that plaintiff cannot show it was not reasonably possible to give such notice and that such notice was given as soon as was reasonably possible; that plaintiff failed to furnish insurer with affirmative proof of loss within 90 days after the date of loss for which claim was made, as required by the terms of the policy; that the insurance contract contains the following provision:

"There is no limitation on the number of times this policy may be used in any one year; however, there must be an interval of at least thirty days between hospital entries"—

it being defendant's contention that because plaintiff was hospitalized twice in the month of April, 1956, first for the period from April 20 to April 22, 1956, and next for a period commencing April 30, 1956, therefore plaintiff's petition shows on its face that there was not a 30-day interval between such hospital entries, and the defendant would, in no event, be liable for other than the first hospitalization, to-wit, April 20 to April 22, 1956.

Defendant having filed its answer setting out the foregoing defenses, plaintiff immediately filed amended pleadings. She abandoned her claim for hospital benefits by reason of the first hospitalization and sued to recover benefits at the rate of $10.-00 per day for only the second period of hospitalization, beginning the third day of the period from April 30, 1956 to June 9, 1956. Plaintiff also alleged that written notice of claim was given within ten days after occurrence or commencement of the

loss, or as soon thereafter as was reasonably possible; that any delay in filing written notice of claim was occasioned by defendant's failure to promptly furnish forms for such notice. Plaintiff further alleged that proof of loss was furnished to the defendant within 90 days after the loss occurred, as required by the policy in question; or, in the alternative, within a reasonable time.

Except for the issue on reasonable attorneys' fees, plaintiff's case was presented to the court through the use of written interrogatories propounded to plaintiff and one other witness, together with certain exhibits which were attached thereto. No cross interrogatories were filed, and none appear to have been taken. The only evidence offered by defendant was a letter dated September 25, 1956 at Nebraska City, Iowa, purporting to be a letter from plaintiff Nellie Parker to defendant; and a copy of plaintiff's original petition offered for the sole purpose of establishing the various dates of plaintiff's admission to hospitals.

The interrogatories of plaintiff and her brother, Bert B. Brown, were admitted into evidence in their entirety with the stipulation that the questions and answers were to be considered as testimony the same as if they had been read from the witness stand, with certain exceptions taken by both parties.

Briefly, the testimony of plaintiff Nellie Mae Parker reflects that she is a resident of Nebraska City, Iowa; that she is a housekeeper and paper-hanger and was engaged in paper-hanging right up to the day she went to the hospital; that the policy of insurance involved here was issued to her by defendant company on March 15, 1955 and that, to the best of her knowledge, she was then in good health and had no existing condition which might later impair her health or which might require either hospitalization or surgical operation. She stated that she was admitted to St. Mary's Hospital in Nebraska City on April 19, 1956 and remained there until April 22; that she then hung paper for a while and returned

to St. Mary's Hospital on April 29. She stated that a hysterectomy was performed on her at the hospital on May 1, 1956; that she remained in St. Mary's Hospital continuously from April 29 to May 11, when she was transferred by ambulance from St. Mary's Hospital in Nebraska City, to St. Joseph's Hospital in Omaha, Nebraska, and that she remained at St. Joseph's Hospital until discharged on June 9.

The plaintiff testified that she furnished written notice of illness to defendant after she was confined in St. Mary's Hospital on the 30th day of April, 1956; that she wrote for forms but had to write three or four different times before they sent them to her, and that she filled them out. She estimated that she filled out four different forms, and said that defendant kept sending her more, and that she kept filling them out. She said that she signed the claim forms furnished by defendant for payment under the hospitalization clause about four different times, but could not recall the date upon which such forms were signed, except that " * * * it was sometime after I got home from the hospital, I don't remember just what day."

The testimony of the witness Bert B. Brown, as reflected by the interrogatories propounded to him, is short. He testified that he was a brother of plaintiff; that he was age 73, a retired U. S. mail carrier, and that his residence was Livermore, Iowa; that he took care of things in Nebraska City (presumably for his sister) while she was confined to St. Joseph's Hospital in Omaha; that he notified defendant insurance company that his sister was confined to the hospital, and helped her with the insurance forms after she returned from the hospital in Omaha.

In reply to Interrogatory No. 7, "Did you obtain forms from the Mercury Life Insurance Company for completion?", the witness stated:

"Yes, and put them with the policy at home, so she would have them to fill out and send when she got out of the

hospital as it was necessary for someone to notify according to the policy. I refer you to page 50 of my records attached hereto."

The answers to the written interrogatories propounded to the witness Brown were taken by M. A. Wallukait, Clerk of the District Court of Humboldt County, Iowa. Attached to answers given by the witness and returned by such official to the trial court at San Antonio, Texas, was a page which had apparently been cut or torn from a bound notebook or ledger. This page is marked "Exh. A" and bears the signature of the Clerk, M. A. Wallukait, and the official seal of his office. Various consecutively dated, hand-written pencil entries appear on the page, and at the top left-hand corner of the page is the printed number "50". The items shown on such page begin with the date of April 24, 1956 and conclude with an item dated June 13, 1956. The opposite side of the page bears the printed number "49", and contains similar entries regarding letters and other business and personal affairs, each of which

items are likewise consecutively dated. Most of the items are marked with a small red "X" opposite the date of the entry. Stapled to the exhibit and made a part of it is a small slip of paper, upon which the following statement is made by the witness, Brown:

"Part of Answer to Question No. 7.

"I always keep a record of all letters I send out. Then when I receive an answer to it. I make a small X in front of it so I know I got an answer. I see by my record on page 50 a small X in front of the 2 insurance companies. So I must have received the claim papers to send in, according to my records that I have not looked at or even thought of for about 4 years. I will cut the whole page out and send it. But please return if possible for me to put back in my Ledger. 'Thanks'. My name is and address is at the top of this page."

Among the entries or items shown on the exhibit are the following:

"April 27, – 1956 X Sis a letter that I will be there for the operation.
May 2, – 1956 X Auto Owners Letter for papers to file claim for Sis
May 2 – 1956 X Mercury Ins. Co.     "     "    "      "     "   "
June 4 X Mercury Ins. Co. 3 months for Sis (Sis has policy)    3 00."

---

We believe it to be unnecessary to pass upon the question of whether the page from the notebook or ledger kept by the witness was, or was not, properly admitted in evidence. We believe, however, he was entitled to refresh his memory from it. The answers of the witness to the interrogatories were given on May 13, 1960, and he testified that he had not looked at or thought about the matters about which he was testifying for about four years. He stated that he did notify Mercury Life Insurance Company that his sister was confined to the hospital, and his "ledger" reflects this was done on May 2, 1956 (less than three days after her entry into the hospital on April 30). He stated that he

wrote to "both companies" (Mercury Life Insurance Company and "Auto Owners", presumably another insurance company, "for papers to file claim for Sis"). He did not recall the date he received the claim forms from the insurance company, but knows he did receive them by reason of the red "X" placed opposite the entries referring to his correspondence with such companies. Further, he stated, "I got the forms from both companies and threw them with her policies on the dresser for her to have when she was home from the hospital." And, "* * * when Nellie came home to Nebraska City from the hospital we filled out the forms together * * *." The witness was returning to his own home in

Iowa the next day, and did not himself send the forms to defendant company, but left them with his sister to send in; consequently, he had no idea when she sent them in, since he was then in Iowa. He stated that he received only one form from Mercury Insurance Company, and he helped her fill out the form for that company. "I returned nothing to anybody. All papers were in a pile at Nellie's home when I left for home. Sis did all the returning." "* * * She came home from Omaha hospital. I came home to Iowa."

■ From the foregoing evidence, we think it may be concluded that defendant insurance company was furnished written notice of plaintiff's illness, if not within 10 days, then at a time when she was still confined to a hospital, and that defendant company, after such notice, and while plaintiff was still hospitalized, did send a claim form to plaintiff at the request of her brother. If it is not affirmatively shown that the notice of the illness was furnished defendant within ten days after the commencement of disability from such sickness, it is, we believe, conclusively shown that such notice was furnished while plaintiff was still in the hospital and while she was still suffering from the disabilities of such illness, from which facts it may be concluded that it was not reasonably possible for plaintiff to furnish notice to defendant of her sickness within ten days after the commencement of disability therefrom, and that such notice was given as soon as was reasonably possible in accordance with the terms of the policy.

■ The record in this case does not reflect the nature of the illness that resulted in plaintiff's first period of hospitalization, which ended on April 22, 1956. While it may be assumed that she was hospitalized on the first occasion for the same illness that caused her to be hospitalized on the second occasion (April 30 to June 9, 1956), we believe it would be equally reasonable to assume that she may have been hospitalized due to any one of hundreds of other sicknesses, infirmities or injuries for which people are hospitalized each day. In any event, since the plaintiff is precluded, under express provisions of the policy, from recovering benefits for *both* periods of her hospitalization because there was an interval of less than thirty days between the first period of hospitalization on April 19th or 20th, and her second hospital entry on April 30, 1956, we believe plaintiff had the right to make an election or choice whether to claim the benefits for the first and relatively short period of hospitalization, or for the second and longer period of hospitalization. Under the circumstances of this case, since defendant insurance company has paid nothing to plaintiff for either period of her hospitalization, we do not think that defendant is in position to urge, as a defense to plaintiff's claim for benefits based solely upon her second period of hospitalization, that there was an interval of less than thirty days between the two hospital entries, and thus relieve itself of all liability.

Plaintiff was released from the Omaha hospital on June 9, 1956 and, under the terms of the policy, she had ninety days thereafter within which to file proof of loss. As we calculate it, the last day upon which proof of loss might have been furnished to defendant insurance company was September 7, 1956. Exhibit No. 6, offered by plaintiff, is a letter from defendant insurance company, dated September 12, 1956, which reads as follows:

"Mr. Bert M. Brown
Box 126
Livermore 4, Iowa

      "Re: Claim MH–1016
           Policy No. 444105
           Mrs. Nellie M. Parker

"Dear Mr. Brown:

  "Answering your letter of September 7th for which we thank you.
  "Please be advised that we are in receipt of claim forms and hospital statement in the above captioned subject.

However, we are awaiting additional information pertinent to this matter before making a decision as to the disposition of this claim.

"Upon receipt of said information, the claims committee will advise you immediately as to their decision.

"Very truly yours,
MERCURY LIFE INSURANCE COMPANY
S. T. Roberts
S. T. Roberts
Claims Department

"STR:s
cc: Mrs. Nellie M. Parker"

The addressee in the above letter is Bert "M." Brown, the brother of plaintiff, and the letter is obviously a reply to an inquiry made by him regarding the status of his sister's (plaintiff's) claim. The witness Brown testified in answer to written interrogatories: "I returned nothing to anybody. * · * *. Sis did all the returning." If the witness' statement is true, it would appear that plaintiff did, in fact, furnish some form of proof of loss to defendant insurance company, and that defendant received plaintiff's claim forms within the 90 days allowed by the policy and prior to Brown's letter of September 7th. The letter from the insurance company acknowledges receipt of claim forms and hospital statement, but says they are awaiting additional information before making a decision. It does not say what specific additional information they desire and makes no request of either Brown or of plaintiff for any additional information.

Defendant offered in evidence a letter dated September 25, 1956, purporting to be from plaintiff, Nellie Mae Parker, and which bears a stamp of the Mercury Life Insurance Company reflecting that the letter was received in its office on September 27, 1956 at 9:00 o'clock. The letter reads in part as follows:

"Dear Sirs—

Just rec'd your card requesting itemized Hos'p Bills so here they are."

Defendant does not contend that the proof of loss furnished by plaintiff was inadequate or insufficient, but merely that it was not furnished them within the 90-day period called for in its contract of insurance. We believe the record here affirmatively shows that defendant insurance company received proof of loss furnished by plaintiff prior to September 7, 1956 and, if not, that defendant waived the strict construction of the contract by requesting plaintiff to furnish "itemized Hos'p Bills" after the expiration of such 90-day period.

Defendant-appellant has based its appeal upon thirteen points of error, most of which have been disposed of by the above discussion. Points 1, 2, 3, 4 and 6 are "no evidence" points. In our consideration of these points we have carefully examined the evidence; and after viewing the evidence before us in the light most favorable to the verdict, and disregarding all evidence which is adverse, contrary or conflicting to the favorable evidence, we have concluded that there is evidence to support the judgment of the trial court. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W. 2d 508; Robertson v. Robertson, 159 Tex. 567, 323 S.W.2d 938; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696. Defendant also contends (Point 5) that when plaintiff was transferred by ambulance from St. Mary's Hospital in Nebraska City, to St. Joseph's Hospital in Omaha, on May 12, 1956, such constituted a separate hospital entry (not separated by a thirty-day interval), and that plaintiff's confinement in the hospital at Omaha was therefore not covered by the terms of the policy. As we see it, plaintiff's hospitalization was continuous during such period, and we overrule such contention without further discussion.

Raised for the first time on this appeal (Point 7) is the contention that plaintiff was over 60 years of age on the dates of the losses for which claim was made, and that the insurance policy pro-

vided that it would not cover anyone over 60 years of age. This defense was not plead by defendant; there is no contention that plaintiff falsely stated her age at the time that the policy of insurance was applied for; on the contrary, there is evidence to show that she truthfully and correctly stated her age; and there is also evidence that defendant insurance company, with notice of plaintiff's correct age, continued to receive and accept the premiums paid by plaintiff on such policy for the periods including the dates of the losses for which claim was made. We therefore overrule this point. Art. 3.70-7, Insurance Code, V.A.T.C.S.

Having considered all points raised by defendant, we are of the opinion that they should be overruled, and it is so ordered.

Finding no reversible error, the judgment of the trial court is affirmed.