NO. 07-08-0344-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL D 

 MARCH 12, 2010

 ______________________________

 ASHLEIGH M. SMITH, APPELLANT

 V.

 ALDERSON ENTERPRISES, L.P., APPELLEE

 _________________________________

 FROM THE 72[ND] DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2007-539,137; HONORABLE RUBEN REYES, JUDGE

 _______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 MEMORANDUM OPINION

Appellant, Ashleigh M. Smith, brought a declaratory judgment, breach of contract, and tort action against Appellee, Alderson Enterprises, L.P. Following a jury determination that Smith entered into a legally enforceable contract with Alderson to purchase a new car, the trial court found that Smith breached the contract and awarded damages to Alderson. In a single point of error, Smith asserts the trial court erred by upholding the jury determination and denying Smiths motion for judgment notwithstanding the verdict. We affirm. 
 Background
In 2004, Smith purchased a Lexus RX330 from Alderson, a car dealership located in Lubbock, Texas. In April 2007, she brought the RX330 to Alderson for repairs and began shopping for a replacement car. On April 5, she asked an Alderson salesman to put some numbers together on a Mercedes ML350 and, two days later, she returned with her husband to look at the Mercedes ML350 and a Lexus IS250. On April 12, Smith met with Jimmy Myatt, the Alderson car salesman who originally sold her the RX330, and after test driving three vehicles, she asked Myatt to put some numbers together on the Lexus IS250. 

After further negotiations, Myatt and Smith agreed on a price for the IS250 and the trade-in value of her RX330. After determining the cash payoff to ABC Bank on her trade-in, Myatt determined the net purchase price and filled out a buyers order form. With a cash down payment of ten thousand dollars, under the Total Payments heading, three financing scenarios were described. One scenario calculated payments of $661.28 per month for thirty-six months without assigning an interest rate. The two remaining scenarios calculated monthly payments for forty-eight and sixty months at 6.9% interest.
Once Myatt obtained Smiths agreement to the figures on the handwritten buyers order form, he took the form to Glen Garnett, Aldersons new car sales manager. After Garnett initialed the order (OK by GG), Myatt introduced Smith to Sharla Snuggs, Aldersons financial services manager. Myatt testified he had sold the IS250 to Smith before he introduced her to Snuggs.
 While Smith was in Snuggss office, the handwritten buyers order form was typed. All of the numbers on the typewritten form were the same with the exception that the forty-eight and sixty month financing options at 6.9% were eliminated and financing at 6.1% for thirty-six months, with payments of $661.28 per month, was typed on the form. The form also indicated a cash payment of ten thousand dollars and provided that Toyota Motor Credit Corporation would finance the balance due. Smith signed the typewritten form. 
 Smith also signed a multitude of other sale documents while she was in Snuggss office. One document was a power of attorney unconditionally permitting Alderson to transfer ownership of the RX330 to another buyer. Smith signed as the RX330's seller and Alderson signed as buyer. In addition to the power of attorney, Smith also signed an odometer disclosure statement for the RX330, as transferor; an arbitration agreement as buyer; an application to register and title the IS250 as purchaser with Toyota Motor Credit Corporation as the first lien holder; a credit application for purchase of the IS250 as applicant; a Motor Vehicle Retail Installment Sales Contract as buyer; and a privacy notice to protect against Aldersons disclosure of nonpublic information as customer. 
Snuggs understood Smith wanted the vehicle titled to reflect her husband as a co-buyer; therefore, she gave Smith a number of documents for Dr. Smiths signature and asked Smith to mail them back to Alderson when they were completed. Subsequently, Smith took delivery of the IS250. Alderson affixed a red tag on the car that indicated Alderson had sold the IS250 to Smith as Buyer. Thereafter, Smith transferred her personal items from the RX330 to the IS250, and drove home to Clovis, New Mexico.

After her arrival, Dr. Smith reviewed the paperwork for the car. He contacted Snuggs and asked her to redo the paperwork so the IS250 could be titled to Smith Chiropractic Center, P.A. with him as personal guarantor. Snuggs re-drafted the paperwork and sent the package to Dr. Smith by Federal Express.
Less than one week later, on April 18, the Smiths were involved in an accident while driving the IS250. The next day, Smith drove the damaged IS250 to Alderson and attempted to return the vehicle, insisting that she was merely test driving the vehicle and had not purchased it. Prior to her arrival, Smith had not informed anyone at the dealership of the accident. 
Myatt looked at the damaged IS250 and attempted to advise Smith on the process for submitting an insurance claim. At Myatts behest, Paul Scott, Aldersons general manager, became involved. Scott suggested that Smith have an estimate of damages prepared by a nearby body shop. Smith drove the car to the body shop where they estimated the damages could be repaired for five thousand dollars. Thereafter, Smith returned to the dealership, left the IS250, and departed.
Later, Dr. Smith called Scott. Scott informed Dr. Smith that his wife had purchased the IS250; however, he did offer to assist with filing an insurance claim and trade-in of the IS250 on another vehicle. Dr. Smith informed Scott that he was calling his attorney. 

In May, Alderson sold the RX330 and paid off the remaining balance of Smiths loan to ABC Bank. Snuggs testified Alderson fulfilled its end of the bargain, i.e., sold Smith the IS250 for the agreed upon price of $36,000, allowed Smith the agreed upon trade-in value of $21,000 on her trade-in, delivered the IS250 to Smith, and paid off the balance of the debt owed to ABC Bank by Smith on the RX330.
Also in May, Smith filed her amended petition for declaratory judgment, conversion, breach of fiduciary duty, and permanent injunctive relief. In addition to tort and contractual remedies, Smith sought a declaration from the trial court that no binding contract to purchase the IS250 existed between Smith and Alderson. Alderson counterclaimed for damages due to breach of contract. 
Following a four day trial, the jury found that Smith and Alderson Enterprises, L.P., enter[ed] into an agreement for the purchase of a 2007 Lexus Model IS250 on April 12, 2007. In its judgment issued July 29, 2008, the trial court found that Smith breached the contract of sale and awarded damages to Alderson. After Smiths motion for judgment notwithstanding the verdict was denied by the trial court, this appeal followed. 
 Discussion

Smith asserts the trial court erred, as a matter of law, by upholding the jurys determination that a legally enforceable contract existed between Smith and Alderson, and denying Smiths motion for judgment notwithstanding the verdict. Smith asserts no contract existed because her husband did not review and sign the sale documentation or approve the car. Smith also asserts the typewritten buyers order, signed by her, was not a contract document because a term varied from the prior handwritten buyers order and the typewritten buyers order was not signed by the dealership. Alderson asserts Smith agreed to buy the car, signed all the necessary documentation, and accepted delivery.
I. Standard of Review
We review declaratory judgments under the same standards as other judgments and decrees. Lidawi v. Progressive County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex.App.Houston [14[th] Dist.] 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. Id. 

In reviewing rulings on motions for judgment notwithstanding the verdict, appellate courts apply the no-evidence standard. See City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005); McGuire, Craddock, Strother & Hale, P.C. v. Transcontinental Realty Investors, Inc., 251 S.W.3d 890, 894 (Tex.App.Dallas 2008, pet. denied). The court reviews the evidence and must credit the favorable evidence if reasonable jurors would and disregard contrary evidence unless reasonable jurors would not. City of Keller, 168 S.W.3d at 826-27. A challenge to the legal sufficiency of the evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla. Kroger Texas Ltd. Pship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006). That is, the evidence offered to establish a vital fact must not be so weak as to do no more than create a mere surmise or suspicion that the fact exists. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). Therefore, the focus of our inquiry is whether the jury's determination that a legally enforceable contract existed between Smith and Alderson is supported by legally sufficient evidence.
Further, when parties offer conflicting testimony, particularly on an issue such as intent, the jury has the exclusive responsibility to determine the credibility of the witnesses, the weight to be given their testimony; Serv. Corp. Intl v. Aragon, 268 S.W.3d 112, 118 (Tex.App.Eastland 2008, pet. denied); Brown v. Taylor, 210 S.W.3d 648, 672-73 (Tex.App.Houston [1[st] Dist.] 2006, no pet.), and resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses. Banks v. Columbia Hosp. at Medical City Dallas Subsidiary, L.P., 233 S.W.3d 64, 67-68 (Tex.App.Dallas 2007, pet. denied). Where the jury believes one partys version of the events underlying the action over another, we cannot substitute our judgment or opinion for that of the jury. Lofton v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986). See Carousels Creamery, L.L.C. v. Marble Slab Creamery, Inc., 134 S.W.3d 385, 404 (Tex.App.Houston [1[st] Dist.] 2004, pet. dismd by agr.). In other words, the jury's determination of the intent of the parties, or the lack thereof, is entitled to almost total deference. 
II. Contract
In its simplest terms, a contract is established when proven by a preponderance of the evidence that an offer is accepted, accompanied by consideration. See Domingo v. Mitchell, 257 S.W.3d 34, 39-40 (Tex.App.Amarillo 2008, pet. denied). To determine whether there was an offer and acceptance, and therefore a "meeting of the minds," courts use an objective standard, concerning what the parties did and said, not their subjective states of mind. See Komet v. Graves, 40 S.W.3d 596, 601 (Tex.App.--San Antonio 2001, no pet.). 
Meeting of the minds describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. Weynand v. Weynand, 990 S.W.2d 843, 846 (Tex.App.Dallas 1999, pet. denied). Where this element is contested, as here, the determination of the existence of a contract becomes a question of fact. Hallmark v. Hand, 885 S.W.2d 471, 476-77 (Tex.App.El Paso 1996, writ denied). 
Further, parties may agree to the material terms of a contract but leave other matters open for later negotiation; it is only when an essential term is left open for future negotiation that no binding contract exists. Kelly v. Rio Grande Computerland Group, 128 S.W.3d 759, 766 (Tex.App.El Paso 2004, no pet.); Komet v. Graves, 40 S.W.3d at 602. Written contracts may also consist of multiple documents; City of Houston v. Clear Channel Outdoor, Inc., 233 S.W.3d 441, 445 (Tex.App.Houston [14[th] Dist.] 2007, no pet.), and writings may be considered together if they pertain to the same transaction. City of Keller, 168 S.W.2d at 811. See Jones v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981) (separate instruments executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument and construed together). In addition, if one party signs a contract, the other may accept by his or her acts, conduct, or acquiescence in the terms of the contract. DeClaire v. G. & B. McIntosh Family Ltd. P'ship, 260 S.W.3d 34, 44 (Tex.App.--Houston [1st Dist.] 2008, no pet.) (collected cases cited therein).

 Here, there is more than a scintilla of evidence supporting the jurys determination that Smith entered into a contract to purchase the Lexus IS250 from Alderson. When Myatt presented Smith with the handwritten buyers order initialed by his sales manager, Alderson made an offer to sell the IS250 to Smith. The offer contained the essential financial elements of the agreement, the sales price, the trade-in value of her RX330, the down payment, and three optional financing arrangements. Smith accepted Aldersons offer on terms identical to those offered in the handwritten buyers order when she signed the typewritten buyers order. The sole difference being that, in her acceptance of the typewritten terms, Smith chose between the three methods of financing offered in the handwritten buyers order. 
That a contract formed was also evidenced by the parties' actions after the type-written buyers order was executed by Smith. Smith executed a power of attorney unconditionally authorizing Alderson to sell her trade-in vehicle and transfer ownership. Alderson delivered the new IS250 to Smith. Smith accepted the new car, removed her possessions from the RX330, placed them in the IS250 and drove to New Mexico with a temporary license tag indicating she had bought the car from Alderson.
Relying upon Gilbert v. Texas and portions of Snuggss testimony, Smith asserts there was no contract to sell the IS250 because Dr. Smith did not sign the sale and financing documents. Snuggs's testimony, however, is equally consistent with the notion that, if Dr. Smith did not sign the sales contract or financing statement, he would not be shown on the title as a co-buyer. Snuggs also testified that Smith agreed to buy the IS250 and the financing agreement was sent to her husband to co-sign. She further testified that the documents were not sent to Dr. Smith to review but to sign and return back. Scott testified the buyers order is the actual sales agreement, not the financing agreement. He further testified Alderson considered the sale of the car to Smith a done deal whether or not Dr. Smith signed off on the sales agreement or financing agreement. Myatts testimony regarding whether Smith bought the car is compatible with the testimony of Snuggs and Scott.
Smith accepted Aldersons offer and undertook to perform the contract as it was prepared, executed, and delivered. See Centennial Royalty Company v. Byrd & Foster Drilling, Inc., 464 S.W.2d 420, 422-23 (Tex.Civ.App.El Paso 1971, no writ). See also Krupp Organization v. Belin Communities, Inc., 582 S.W.2d 514, 518-19 (Tex.Civ.App.Houston [1[st] Dist.] 1979, writ refd n.r.e.). That her husband, Dr. Smith, was listed as a buyer on upper portions of the buyers order form does not prevent a binding contract to purchase the IS250 from being formed as between Smith and Alderson unless the parties agreed that Dr. Smith's signature was a prerequisite, or condition precedent, to the formation of a binding contract. 
III. Condition Precedent
Smith asserts there was no meeting of the minds on the sale of the new car because she understood there could be no contract to purchase the car until her husband had signed the paperwork and was otherwise satisfied with the car. In essence, Smith contends her husbands signature and satisfaction were conditions precedent to the existence of a contract for the purchase of the new car.
A condition precedent may be a condition to the formation of a contract. Hohenberg Bros. Co. v. George E. Gibbons, 537 S.W.2d 1, 3 (Tex. 1976). See Progressive County Mut. Ins. Co. v. Trevino, 202 S.W.3d 811, 814-15 (Tex.App.San Antonio 2006, pet. denied). In order to make performance specifically conditional, a term such as if, provided that, on condition that, or some similar phrase of conditional language must normally be included in the contract. Criswell v. European Crossroads Shopping Center, Ltd., 792 S.W.2d 945, 948 (Tex. 1990). Although there is no requirement that such phrases be utilized, their absence is probative of an intention that a promise be made rather than a condition imposed. Hohenberg, 537 S.W.2d at 3. See Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc., 201 S.W.3d 272, 281 (Tex.App.Houston [14[th] Dist.] 2006, no pet.). And, because of their harshness, conditions precedent are not favored in the law. PAJ, Inc. v. Hanover Ins. Co., 243 S.W.3d 630, 636 (Tex. 2008); Hirshfeld, 201 S.W.3d at 281.

Here, there is no express contractual provision creating any condition precedent asserted by Smith. Nevertheless, where one party testifies that a contract was conditioned upon the happening of an event and the other party denies the existence of such a condition, as we have here, the evidence raises an issue of fact to be decided by the jury. Turboff v. Gertner, Aron & Ledet Investments, 763 S.W.2d 827, 830 (Tex.App.Houston [14[th] Dist. 1988, writ denied) (conflicting testimony on issue whether partys signature was a condition precedent to a contract raises a fact issue); Perry, 377 S.W.2d at 771. Although Smith testified it was her understanding or assumption there would be no contract until her husband signed the documents or expressed his satisfaction with the car, there is no evidence of record indicating she voiced her understanding to anyone or that anyone at Alderson agreed with this proposition. Rather, Myatt, Snuggs, and Scott all testified Smith unconditionally purchased the car. Thus, even if Smiths testimony created a conflict in the record, the jurys verdict on such matters is generally regarded as conclusive. Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508, 511-12 (1947). 
In addition to asserting that a sales agreement could not be premised on the buyers orders, Smith also asserts the Motor Vehicle Retail Installment Sales Contract was not a valid sales agreement between Smith and Alderson because the document was not executed by either Dr. Smith or Alderson. Having already determined that the buyer's order form is sufficient indicia of an agreement between Smith and Alderson, we need not decide the enforceability of the MVRISC as further evidence of that agreement. The jury was asked simply to determine whether Smith and Alderson Enterprises, L.P., enter[ed] into an agreement for the purchase of a 2007 Lexus Model IS250 on April 12, 2007, and we find there is more than a scintilla of evidence to support their determination. 
Although Smith also asserts there was no contract because she did not read the documents before she signed them, she does not claim she was tricked or defrauded. She testified that neither Myatt nor Snuggs were high-pressure or pressured her into a sale. Further, she spent nearly four hours with the documents in Snuggss office while speaking with her husband on the telephone. As such, she is charged with knowledge of all the terms of the documents she signed. In re Prudential Ins. Co. of America, 148 S.W.3d 124, 134 (Tex. 2004). See Wee Tots Pediatrics, P.A. v. Morohunfola, 268 S.W.3d 784, 791 (Tex.App.Fort Worth 2008, no pet.). [P]arties to a contract have an obligation to protect themselves by reading what they sign. Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1963).
Because there is more than a scintilla of evidence to support the jurys finding that Smith and Alderson did enter into an agreement for the sale of the IS250, Smiths single point of error is overruled.

 Conclusion
The trial courts judgment is affirmed.

Patrick A. Pirtle
 Justice