

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00042-CV
_____

JEM INTERNATIONAL, INC., APPELLANT

V.

WARNER PROPERTIES, L.P., APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-14E-079, Honorable Roland D. Saul, Presiding

September 24, 2018

## MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

In this business damages case JEM International, Inc., appeals an adverse judgment awarding appellee Warner Properties, L.P., damages and attorney's fees and ordering that JEM take nothing by its counterclaim. We will overrule each of JEM's issues on appeal and affirm the judgment of the trial court.

## Background

Warner operates a seed company in Hereford, Texas. In 2012, it considered automating its process of lifting bags filled with seed from conveyors and stacking them on shipping pallets. JEM representative James Goudy visited the Warner facility late in the year and represented that JEM could supply a robotic conveyor system capable of meeting Warner's requirements. Goudy specifically explained to Warner controller and general manager Pete Scariati that a JEM robotic conveyor system would take sacks of seed from a conveyor and stack them in eight to ten layers on a shipping pallet. Goudy also stated the system would handle both fifty-pound bags and twenty-kilogram bags for foreign shipment.

While at the Warner plant Goudy spent two hours in the warehouse where the system was to be installed. His inspection allowed him to create a configuration for the robotic system. JEM provided a quote for the system in November but due to Warner's year-end schedule the quote was not accepted.

In 2013, Warner again made inquiry of JEM; a revised quote was issued and an agreement reached. The order price for the system was $266,500. Payment was due in installments of forty percent down, forty percent prior to delivery, and twenty percent "net 30 days." The October 23, 2013, "sales order" provided in part, "[o]ne week start up and training (travel and expenses are extra) [sic] Includes: installation assistance, control integration and recipe programing . . . [.]" Warner tendered a down payment of $106,620, and the robotic-system parts were shipped during December 2013 and January 2014.

Disagreements between the parties soon followed delivery of the parts. Broadly stated, the evidence showed Warner expected JEM to uncrate, assemble, and make the system operable while JEM viewed much of the responsibility for this process as Warner's. Warner expected the system to perform as represented.

When JEM personnel arrived in January 2014, additional time, the amount of which was disputed, was spent uncrating and laying out the system. Warner asked to relocate the system ten to twelve feet backward in the warehouse. There was testimony that a JEM representative responded "not a problem" to the request. It was not disclosed that the relocation would increase Warner's cost and delay the installation time.

Once the system was uncrated, JEM disclosed that the robot could not operate in temperatures below forty to forty-five degrees. The warehouse had no heating system. By email, a JEM representative recommended Warner add a heating system or "simply not operate it below 45°F." Alternatively, JEM offered to provide a quote for a "very expensive" heat jacket for the robot. Warner purchased commercial heaters and had them installed by an electrician. Besides wiring for the heaters Warner also had to pay for additional electrical work for conveyor motors. Lighting in the warehouse also proved insufficient, so Warner purchased additional lighting.

In trial testimony Goudy agreed the JEM sales invoice did not state the buyer was responsible for uncrating, laying out, and installing robotic system conveyors. But according to Goudy, the invoice's language "installation assistance, control integration, and recipe programing" applied to the robot only. Goudy acknowledged that, "in hindsight," the sales invoice should have been more clear.

JEM was able to make the system operate but there was testimony, supported by videos played for the jury, that it did not stack the pallets properly. The Warner robotics consultant, Landon Friemel, testified a Warner employee told him the system did not function without human intervention. After a brief time, the system ceased working altogether. The problem was isolated to the system's computer and operator touchscreen. Attempts by JEM to replace these components separately proved fruitless as, according to testimony, they corrupted each other when reinstalled separately.

Erik Link, Sr., a robotics expert retained by JEM to facilitate the Warner installation, testified at trial. During early 2014, he twice came to Hereford to work on the Warner project. Link believed the system was operable after his second visit. Thereafter the computer and touchscreen failed and were sent to his place of business in Alabama. Link testified he did not determine the cause of the failure. Without the computer and touchscreen the robotic system was inoperable.

In February 2014, JEM submitted a $27,096.62 invoice to Warner for installation labor and expenses. Warner disagreed that the full amount claimed was due and asserted it would pay nothing more to JEM until the system worked as represented. JEM responded that if Link were to return with a working touchscreen and computer Warner would have to pay the installation invoice. It reduced the total demanded to $19,000. At trial, Goudy agreed he could not dispute that the last time a JEM representative was at the Warner plant the robotic system was not operable.

Warner paid nothing on the JEM invoice and Link did not return. Nor did Warner make the second and third installment payments of the purchase price. There was

testimony that while JEM personnel attempted to make the system work Scariati had a check for the remaining balance on his desk and was prepared to tender it to JEM as soon as the system worked as represented.

Instead of paying the installation invoice to obtain Link's return, Warner hired Friemel to make the system operable. Friemel testified in some detail of the problems he encountered and the corrective steps he took. He purchased and installed a larger touchscreen and a new computer. He also re-programed the robot. The system was not delivered with operating manuals. And Friemel discovered Warner was not licensed by the manufacturer. Warner paid the licensing fee and received new software and updated manuals. After about a year, Friemel was able to make the system operate. Warner paid Friemel a flat fee of $20,000 which included parts and labor. He estimated his time spent on the project was 133 hours.

Warner sued JEM in May 2014 for breach of contract. Its live pleading at trial alleged theories of breach of contract and warranty and violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA).[1] JEM filed a counterclaim alleging breach of contract by Warner for not fully paying for the system or alternatively recovery in quantum meruit.

The parties presented evidence of their claimed damages at trial. The damages Warner sought totaled $185,893.07. Among the categories, were $37,746.30 for the cost to complete installation of the system. This total included Friemel's $20,000 fee. Evidence of $146,227.50 for labor costs to Warner because the system was inoperable

---

[1] TEX. BUS. & COM. CODE ANN. §§ 17.41-.63 (West 2011 & Supp. 2017).

was presented. Evidence of labor costs for installation of the system totaled $5,625. Finally, Warner sought its out-of-pocket cost of $2,945.64 for installing a seed-bag label printer. On its counterclaim, JEM sought recovery of $203,664. This amount consisted chiefly of the remaining balance due on the sale contract and invoices for installation labor and expenses.

The trial court's charge[2] submitted liability questions concerning breach of implied warranty, breach of express warranty, and violation of the DTPA,[3] leading to a single conditionally submitted damage question. Contract damages were conditionally submitted separately. The jury answered "yes" to each of Warner's liability theories and "no" to those of JEM. It found total damages for Warner of $108,451.43 consisting of $24,879.79 costs to complete the system installation; $2,946.64 to complete the printer installation; $5,625 for installing the robotic system; and $75,000 for labor costs incurred while the system was inoperable. It awarded Warner attorney's fees, including conditional awards for appeal and petition for review, totaling $120,460.

Based on the jury's verdict, Warner moved for judgment. JEM filed a response opposing Warner's motion and requesting a new trial. According to the motion for new trial, after the jury was discharged JEM contacted some of its members and learned of

---

[2] JEM made no objection to the charge.

[3] The DTPA liability question inquired whether "JEM engage[d] in any false, misleading, or deceptive act or practice that Warner relied on to its detriment and that was a producing cause of damages to Warner." The court defined "false, misleading, or deceptive practice" as: "Representing that goods or services are of a particular standard, quality or grade when they are of another; or Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve." *See* TEX. BUS. & COMM. CODE ANN. § 17.46(b)(7),(12) (West Supp. 2017).

what it called a jury "clerical mistake" resulting in an improper verdict. It argued "the jury's unanimous intent was to award damages to JEM on its breach of contract claim against Warner for the amount owed to JEM for the equipment, excluding the computer and touchscreen for the robot, and excluding labor and travel expenses sought by JEM." This meant, JEM further contended, the jury should have answered "yes," rather than "no" to a question inquiring if Warner breached the contract and should also have answered with an amount of money to a related, conditionally submitted, damage question. JEM accordingly sought a new trial under rule 320[4] because, taking the jury's "clerical error" into account, the damages awarded Warner were manifestly too large and those awarded JEM were manifestly too small. The trial court held a hearing on JEM's motion and heard the testimony of ten jurors. It denied the motion. Warner elected to recover under the DTPA and the trial court signed a judgment awarding Warner the damages and attorney's fees found by the jury and costs.

## Analysis

Through its issues one, two, and four JEM challenges the sufficiency of the evidence supporting: JEM's commission of a false, misleading, or deceptive act or practice; Warner's detrimental reliance on a misrepresentation; and producing causation.[5]

---

[4] *See* TEX. R. CIV. P. 320.

[5] A consumer seeking to recover under the DTPA's "laundry list" of false, misleading, or deceptive acts or practices" must plead and prove its detrimental reliance on the defendant's deceptive conduct was a producing cause of its damage. TEX. BUS. & COMM. CODE ANN. §§ 17.45(4) (West Supp. 2017), 17.46(b) (West Supp. 2017), 17.50(a)(1) (West 2011).

Warner asserts these evidentiary sufficiency challenges were not preserved in the trial court.

Preservation of error for appellate review requires that a party timely object in the trial court. TEX. R. APP. P. 33.1(a). A proper objection must be specific enough that the trial court can understand the precise nature of the error alleged and the objection must be made at such a point in the proceedings that the trial court is able to cure the error alleged. *Lake v. Premier Transp.,* 246 S.W.3d 167, 174 (Tex. App.—Tyler 2007, no pet.). And any complaint made on appeal must comport with the objection made before the trial court. *Knapp v. Wilson N. Jones Mem'l Hosp.,* 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.).

Complaints of legal and factual insufficiency of the evidence in a case tried by jury must be preserved in the trial court. *See Daniels v. Empty Eye, Inc.,* 368 S.W.3d 743, 748-49 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A complaint that the evidence was legally insufficient is preserved by: (1) a motion for directed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Cecil v. Smith,* 804 S.W.2d 509, 510-11 (Tex. 1991). A legal sufficiency challenge preserved only by a motion for new trial does not entitle the appellant to rendition of judgment. *In re C.L.,* No. 07-14-00180-CV, 2014 Tex. App. LEXIS 11104, at *11-12 (Tex. App.—Amarillo Oct. 7, 2014, no pet.) (mem. op.). A challenge of the factual sufficiency of the evidence must be raised by a motion for new trial. *Cecil,* 804 S.W.2d at 510; TEX. R. CIV. P. 324(b)(2).

A party challenging the legal sufficiency of an adverse finding on which it did not have the burden of proof at trial must demonstrate no evidence supports the finding. *Lone Star Engine Installation Ctr., Inc. v. Gonzales,* No. 05-14-01616-CV, 2016 Tex. App. LEXIS 5006, at *15 (Tex. App.—Dallas May 11, 2016, pet. denied) (mem. op.) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983)). In determining the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it. *Scott's Marina at Lake Grapevine, Ltd. v. Brown,* 365 S.W.3d 146, 151 (Tex. App.—Amarillo 2012, pet. denied) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005)). We credit favorable evidence if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not. *City of Keller,* 168 S.W.3d at 827. If the evidence would permit reasonable and fair-minded people to reach the finding under review, the legal sufficiency challenge fails. *Id.*

When a party challenges the factual sufficiency of the evidence, we consider all of the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Scott's Marina,* 365 S.W.3d at 151 (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986)). In conducting our review, we are mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller,* 168 S.W.3d at 819.

We agree with Warner that JEM did not preserve its legal or factual sufficiency challenge of the DTPA elements included in issues one, two, and four. Despite JEM's argument in its reply brief, we are unable to read its motion for new trial, where it

complained that damages were manifestly too large for Warner and manifestly too small for JEM because of the jury's "clerical" error, as bringing to the trial court's attention a challenge to the sufficiency of the evidence supporting jury findings on the ultimate fact issues challenged by issues one, two, and four. Moreover, we have carefully reviewed the entire evidentiary record according to the above standards and find sufficient evidence permitted the jury to implicitly find in favor of Warner on the elements JEM challenges by those issues. JEM's first, second, and fourth issues are overruled.

By its third issue JEM argues no evidence supports its DTPA liability because Warner's only evidence of deceptive acts or practices depends on alleged duties and damages arising under the parties' agreement. The gist of JEM's assertion is that Warner's liability claim under the DTPA exists only because the wrongful conduct alleged is for breach of the parties' agreement and the injuries alleged are only for the economic loss to the agreement's subject. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex. 1991) (explaining the two-pronged analysis); *see generally Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986).

Like its other no-evidence complaints, this issue was not preserved in the trial court and therefore presents nothing for appellate review. TEX. R. APP. P. 33.1(a); *Equistar Chems., L.P. v. Dresser-Rand Co.,* 240 S.W.3d 864, 867 (Tex. 2007) (economic loss rule complaint not preserved by objection to jury charge damage question); *Caldwell v. Wright,* No. 10-14-00244-CV, 2016 Tex. App. LEXIS 8633 (Tex. App.—Waco 2016, no pet.) (mem. op.) (same). JEM's third issue is overruled.

In its fifth issue JEM challenges the award of attorney's fees to Warner. Its first argument here is predicated on the correctness of its evidentiary sufficiency challenge to Warner's DTPA claim. It argues if Warner was not a prevailing consumer under the DTPA it is not entitled to an award of attorney's fees. *See* TEX. BUS. & COMM. CODE ANN. § 17.50(d) (West 2011) ("Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees"); *Gulf States Utils. Co. v. Low,* 79 S.W.3d 561, 567 (Tex. 2002) ("Without an actual-damages recovery, a party is not entitled to an attorney's fees recovery"). But we have overruled JEM's challenge of Warner's DTPA recovery.

JEM further argues the reasonableness of an award of attorney's fees under the DTPA was not shown because "at least 80% of the attorney's fees awarded were incurred during a period in which no DTPA cause of action was even being pursued." Warner's case began with a breach of contract claim, for which attorney's fees are recoverable.[6] Some thirty days before trial it added a DTPA claim. Warner's attorney testified at trial of fees and expenses supporting an award under the DTPA, breach of contract, and breach of warranty claims. He segregated as unrecoverable $2,500 for defense of JEM's quantum meruit counterclaim. The attorney supported his testimony by placing in evidence detailed billing statements and a spread-sheet summary of fees and expenses. JEM did not raise objection to the legal or factual sufficiency of the evidence supporting an award of attorney's fees. Nor did it otherwise make the argument in the trial court it now urges on appeal. The issue was therefore waived and nothing is preserved for our review. TEX. R. APP. P. 33.1(a). Moreover, based on our review of the record, we believe

---

[6] *See* TEX. CIV. PRAC. & REM. CODE Ann. § 38.001 (West 2015).

legally and factually sufficient evidence supported the reasonableness of an award of attorney's fees to Warner under the DTPA. As an aside, we note that Warner sought fees through trial of $72,960 while JEM sought fees through trial of $94,429.25. The amount of an opponent's fee request is a "surer indicator[] of a reasonable fee." *El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 766 (Tex. 2012) (Hecht, J., concurring). We overrule JEM's fifth issue.

By its sixth issue JEM asserts Warner obtained a double recovery because it did not pay the full sales price for the robotic system yet was permitted to retain it. We will assume, only for this discussion, that JEM preserved the issue through the argument in its post-trial motion that the damages were manifestly too large in favor of Warner and manifestly too small as to JEM. *See* TEX. R. CIV. P. 320. The argument's merit, however, depends on the efficacy of JEM's post-trial theory that the jury made a clerical error by failing, after unanimously reaching a verdict, to write "yes" rather than "no" in response to the question asking whether Warner breached the contract and failing to enter an amount of damages in response to the corresponding damage question. The trial court denied JEM's motion for a new trial based on that ground and JEM has not challenged its denial on appeal.

Alternatively, JEM argues a finding of zero damages for Warner's alleged breach of the contract was against the great weight and preponderance of the evidence. This claim of error was not preserved in the trial court. Additionally, the pertinent damage question was conditioned on a "yes" finding to the question inquiring of Warner's liability for breach of contract. Because the jury answered "no" to the breach of contract question it rightly did not answer the damage question. JEM's sixth issue is overruled.

By its seventh issue, JEM seeks reversal and remand for an award of reasonable attorney's fees. The argument depends on it first prevailing on the precedent issue that Warner breached the contract, entitling JEM to a monetary award. Because we have overruled JEM's breach-of-contract issue we overrule its seventh issue as moot.

Conclusion

Having overruled each of JEM's issues we affirm the judgment of the trial court.

James T. Campbell
Justice